We'll hear first from Mr. Blau. Your Honor, I had requested that the plaintiff's attorney give me at least three minutes for rebuttal. You have a total of ten minutes. Yes. You'll get at least one minute even if you use up all ten. Yes, sir. Yesterday, on the eve of oral argument, at 11 o'clock in the morning, the temperature went up. I received a motion for sanctions against my client claiming that my entire appeal was frivolous, that I had misled the court, that I had mischaracterized Illinois law. So I wound up kind of wrestling with an angel last night, an angel that wanted me to focus on the sanctions motion and throw my client under the bus. I don't think that I mischaracterized the law or anything else, but my job is not to throw my client under the bus but to present the merits of the appeal. Mr. Blau, you'll have an opportunity to respond to that late motion in writing. Thank you, Judge. I appreciate that. Could I ask you, if we get to the merits of the appeal and focus on that. Yes. Thank you, Judge. Your position and theory in this court seems to be completely different from the theory that you offered in the district court. Absolutely. Judge, the issue that, the preliminary threshold issue, is that we believe that federal law applied to Rule 68 judgments, which everybody agrees are considered under Illinois the same, in Illinois law, the same as consent judgments. The other side, citing a group of cases before Judge Gettleman and before this court, said no, state law applies. Federal law incorporates state law under these circumstances. In this case, yes, that's right, because of Erie, Judge Hamilton, exactly. But you didn't make the arguments to the district court that you're making to us, did you? No, they did. That's exactly right. We did not. We said federal law applied. If I could, Mr. Blau, skip to a couple of issues that really concern me about this. Yes, Judge Hamilton. Your client made a Rule 68 offer of judgment, correct? Yes, absolutely. And that was accepted? It was. Has it been paid? No. Why on earth not? Pardon me? Why not, and why is that not evidence of bad faith in this litigation? My client has submitted to post-judgment proceedings, as mentioned in the transcript that we quoted. Those proceedings led the other side to and told, Judge Kendall, that based on the information they had, and I mentioned this in my brief, that they didn't see the point of continuing to pursue them as long as the amount involved was as small as it was. And that is because my client was heavily in debt and proved that through the discovery that they presented. And so, Judge Hamilton, this case, this appeal, and this entire case represents my client's hope to have positive assets. I'm sorry? This case represents my client's only hope to have a positive balance sheet. He offered a consent judgment that he was unable to pay. That the client was unable to pay. And then countersued for, what, $25 million? Yes, Judge. Is that right? Yes, Judge. Okay. And here's what worries me. Yes, Judge. Put aside precedent, which does not favor your case, but if your position were correct here, we're all familiar with commercial relationships in which disputes arise. There may be narrower claims, broader claims. Maybe you just see contract damages. Maybe if the temperature rises, you start seeking punitive damages or assert statutory claims, right? Of course, Judge Hamilton. So, under your theory, the party you offer advantage. Rule 68. The Rule 68 judgment. Right. Don't pay it. Then you turn around and say, here are all these multimillion-dollar claims that I'm asserting against you. And would they be able, for example, if this case were to go forward, would they be permitted to assert further counterclaims, in this case, against your client arising out of the same transactions here for, let's say, As I understand Rule 68, it encompasses those claims that were made or could be made by them. So you would assert a race judicata claim as to such counterclaims if they were asserted in this case going forward, right? I understand your point, Judge Hamilton. It seems to me that my duty to my client would say that I would make that claim. So your position here, Counsel, your position here, thus seems to invite a really outrageous form of gamesmanship, if we were to accept it. I understand, Judge. Should I be troubled by that? Yes, you should be, Judge. But the issue that we're arguing, the issue that we're presenting to you, is that under Rule 68, that Illinois law applies, and that under that rule, we contend that a consent judgment is all the, and you've seen our table in the reply brief, I know that, that under Rule 68, those consent judgments do not constitute race judicata. And so the problem with the position that would otherwise be taken is that if the Supreme Court agrees that there is no race judicata, then there's no race judicata. And that's exactly, if the Supreme Court says it's race judicata, we're done, aren't we? Judge Hamilton, we're out of court. But if they say there's no race judicata, then the gamesmanship concern that you're raising also disappears because there's no race judicata. You see the way that plays out? The gamesmanship remains. You know, it appears from this suit that the plaintiff never really either believed that it owed the amount or, I don't know. But made this Rule 68 offer for the entire amount in that first lawsuit. Why did the plaintiff raise as counterclaims in the first suit the claims that you're now bringing in the second suit? I mean, what a waste of judicial resources. Judge Robnick, it seems to me that part of the calculus in making the decision on Rule 68, if you look at the judgment below, the amount of the judgment was dwarfed by the attorney's fees. If you look at it, the attorney's fees involved were humongous. And that was a case in which no motion practice existed. We hadn't filed an answer or a counterclaim. Nothing had happened. So that means that the same issues that are in front of you now where counsel for Mr. Guinan are trying to get legal fees, in this case, would have happened with respect to the entire panoply of issues in the case below. As we understand Rule 68, Rule 68 allows us to make an offer which under Illinois law, as best I can ascertain Illinois law, all the cases decided in the last ten years seem to go, a majority of them, a significant majority of them, are away. I'm sorry, Judge Hamilton, please. That's an extraordinary claim. Sir? That's an extraordinary claim given Illinois law on this subject, but go ahead and proceed. Judge, we sincerely believe, are we now down to, I think I'm down to 50 seconds on it. Yes. Right. So I sincerely believe that, and the table shows that there is a split. There's a case that says there's a split. The petition for leave to appeal. The other side did not get the four petitions. We got them. One of them said there was a split. The other never mentioned it. We think there is a split, and that is a critical issue. If I could ask you briefly, though, you chose to file this claim in federal court, correct? Yes, because, Judge, under the Commodity Exchange Act, we have no other place to file it. The Commodity Exchange Act specifically says that claims for commodity exchange fraud are exclusively and only in federal court. You can't bring it anywhere else. You can't. And those claims are different. They call them redundant. They're not redundant. The Commodity Exchange Act has different scientific rules. Okay. Yeah, I'm sorry. Judge Scudder, I don't need to be wasting your time. Thank you, Counsel. So I can hold the three minutes? Thank you.  You used all your time. You'll have one minute in rebuttal. Okay. Thank you, Judge. For the defense, Mr. Paronsky. Good afternoon, Your Honors. May it please the Court. Brian Paronsky on behalf of Appellee Joseph Guinan. We think there's multiple very simple reasons why you should affirm the judgment below. I'll address each of those in turn. I'll try to be brief, and then I'm happy to answer any questions that you have. So the first reason that you should affirm the judgment below is because Hal waived its entire argument on appeal. They tell you now that this is a question of Illinois law. They told Judge Gettleman below, this is a question of federal law. He agreed with them, and they lost. So they've waived their entire argument on appeal. If you consider Illinois law, despite Hal's waiver, Illinois law is clear, and it's settled in this Court. Three different times this Court has said, under Illinois law, a consent judgment is a final judgment on the merits. And in its appeal, Hal just ignored these cases. They cited one, but they didn't say anything about it, and they simply ignored the other two cases. That's not a viable option. That's not a viable appellate strategy for dealing with precedent. And then if you ignore that failure and consider whether to overrule your own precedent or whether to certify this case, the clearance here is you should not. And, again, on this issue, too, we think Hal never actually engages with the relevant issues. What this Court does, what it interprets Illinois law, is it applies the law of the Illinois Supreme Court or it predicts what the Illinois Supreme Court is going to do. That's eerie. That's simple. Hal doesn't argue that your precedent is inconsistent with what the Illinois Supreme Court would say. What they say is, well, there's some courts in one of the intermediate appellate courts that find that a final judgment – I'm sorry, that a consent judgment is not final. They're not even making an argument that works here. That's an argument, as we say in our sanctions motion. It's for ordained to lose. This issue was actually decided by this Court in all state v. Menards. The Court considered, should we apply different versions of Illinois law based on where the district court is? And it said, no, we're going to do eerie. We're going to predict what the Illinois Supreme Court will rule. And so Hal never even makes that argument. The cases that go our way, the argument would be, these first district cases are more consistent with what the Illinois Supreme Court would rule because these would be persuasive in front of the Illinois Supreme Court because they don't even engage on that. In fact, they don't even tell you anywhere in their briefs, including in their reply, what those cases said. The only way to answer that question is to engage with the legal reasoning and the logic of these, we think are two, these two first district cases that have any precedential authority. And Hal doesn't even tell you what those cases said, how they ruled, why they ruled. Now, we did, we addressed that. I'm not going to go through all of it, but we think it's very clear from what we say in our briefs that these two cases, Goodman and Curry, they trace back to this Candelapis case. And that's a very unique circumstance. The outcome in that case probably made sense, but the court there did not say no consent judgment is final. They said in this case, based on what happened here, the judgment that you want to enforce party is not final. And we think Curry and Goodman just misread those. As we say in our briefs, Curry and Goodman are contradicted by dozens of other Illinois precedent. This includes cases in this decade. This includes a first district case in 2013, the Camper case. So it's very clear. We think it's very clear what the Illinois law is. And again, the question that they would have to address here to get you to change your mind or to raise a genuine uncertainty is whether the Illinois Supreme Court would change their mind. Mr. Pronsky, I just have one question that's unrelated, if you don't mind, to the point you're making right now. And that is, I noticed in your red brief on page 2, for purposes of the second lawsuit, this is in your jurisdictional statement? Yes. Okay. You were just saying your client's unable to confirm or deny that there's diversity jurisdiction, and then you explain why. Yes. It's clear. I understand it. Okay. Is there diversity jurisdiction in the first case? Or let me ask the question differently. Does the reason that you waver a little bit, you know, waffle on that in the red brief here, did that same reason exist in the first case? Well, yes, it would have, as a matter of fact. As we say in our briefs, and you can sort of see it in the filings below, when Advantage brought that lawsuit against HAL, they had representations from HAL. Our sole owner is a person named Aaron Feffer. And so we absolutely believe there was diversity. I think, and we told you our belief in the jurisdictional statement here, we believe there is diversity. All of the different cast of characters that HAL has told us at one time or another are their owners. The ones who we know are all New York citizens. And so we believe it's one of these three people, Seidenfeld, Weber, Feffercorn. And that belief was there in the first lawsuit? Absolutely. In the first lawsuit. So you didn't indirectly put that sentence in the brief here in our court to raise a question about whether there was federal jurisdiction? No, no. We solely did that because we understand we have an obligation as an appellee to tell you whether their statement is complete and correct. I understand. We have made that point again and again. We've read those cases. So I think I'm about to wrap up. But, again, we engage with the logic and reasoning of these cases. In their reply, when HAL has a chance to say, no, you're wrong, here's why the Illinois Supreme Court would find it persuasive, what do they say? They say, well, Mr. Guyton may think these cases are no good, but the Illinois Supreme Court might very well disagree. That's on page nine. That's their entire argument about what the Illinois Supreme Court would rule is maybe they'll do it. And maybe the Illinois Supreme Court would rule one way is not enough for you to overturn your precedent. It does not create a genuine uncertainty about what the state law is. Do you agree that the gamesmanship concerns I raised would be substantial if we were to accept the plaintiff's theory here? We think that it would be very substantial. Litigation would be impossible. I mean, it would destroy all of the purposes of race butchery. Not to mention Rule 68. Rule 68. And I would just point out HAL doesn't even quite believe what they're saying. In their reply brief on page 18, they kind of, I think, they meander into a different issue, not finality of judgments, but an issue they never raised. But what they say is, well, obviously, HAL's liability to advantage is settled. They can never come after us for more money. They can never sue us again. But if what they're saying is true, that these judgments aren't final, of course we could. We could sue them again tomorrow. We could make up ten more claims. We could do it over and over and over again if these aren't final. So it would be a huge problem. Thank you, counsel. Let's see. Mr. Blau, one minute of rebuttal, please, if you'd like. It said I might be able to submit a brief in response to the motion filed yesterday. You will. That's standard under the rules. Okay. Judge, the other side mentioned that we didn't address the cases, the Taurus cases, and the two other cases they cited. We did mention those cases in our reply brief. We went over that in detail, all three cases. We talked about them at the bottom of 15 and the top of 16. But also, they say that there are only two cases that there's reasoning and logic you can consider because they're reported cases. But there are four unpublished decisions. And under Seventh Circuit case law, this court has noted that in Illinois, under Supreme Court Rule 23, you don't cite them. It doesn't bar the parties from citing cases to use the reasoning and logic. He says the reasoning and logic of the first two cases should be the only thing you look at. And we say that the four unpublished decisions also have reasoning and logic. And they do say that there's a conflict. They do say that this issue. If, in fact, there's no race judicata, then that's a critical issue. Thank you, counsel. Thank you so much. Our thanks to both counsel for the submissions. The case is taken under advisement. That concludes our calendar for today. The court will stand in recess. Thank you. Thank you.